# In the United States Court of Federal Claims

No. 14-1115 C
Filed: February 10, 2015[1]

```
*****************************************
                                        *
UNIVERSAL MARINE CO., K.S.C.,           *
                                        *
        Plaintiff,                      *
                                        *
v.                                      *   Bid Protest;
                                        *   Interested Bidder;
THE UNITED STATES,                      *   Competition In Contracting Act,
                                        *       31 U.S.C. § 3551;
        Defendant.                      *   Lowest Price Technically Acceptable
                                        *   Source Selection,
and                                     *       48 C.F.R. § 15.101-2;
                                        *   Standing.
KGL INTERNATIONAL FOR PORTS             *
WAREHOUSING & TRANSPORTATION            *
K.S.C.C.,                               *
                                        *
        Defendant-Intervenor.           *
                                        *
*****************************************
```

**John Magnus Scorsine**, Watson & Associates, LLC, Aurora, Colorado, Counsel for the Plaintiff.

**Jana Moses**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

**David C. Hammond**, Crowell & Moring LLP, Washington, D.C., Counsel for Defendant-Intervenor.

## MEMORANDUM OPINION AND FINAL ORDER

**BRADEN**, *Judge*.

---

[1] On December 30, 2014, the court forwarded a sealed copy of this Memorandum Opinion And Final Order to the parties to delete from the public version any confidential and/or privileged information, and note any citation or editorial errors requiring correction. The court has incorporated some of these comments and corrected or clarified certain portions herein.

I.      RELEVANT FACTUAL BACKGROUND.[2]

A.      Solicitation No. W52P1J-14-R-0062

In March 2009, the United States Army ("the Army") awarded Contract W52P1J-09-D-0025 to Universal Marine Co., K.S.C. ("Universal Marine") for the operation of a container yard in Kuwait that repairs and refurbishes commercial shipping containers.  AR Tab 31b, at 1216.

On April 24, 2014, the Army solicited Request for Proposals No. W52P1J-14-R-0062 (the "RFP") for the same services as the March 2009 Contract.  AR Tab 15, at 88.  The RFP was for a fixed-price contract that included: one base year; four one-year evaluated options; and one six-month option.  AR Tab 15, at 88–89.  Attachment 0002 of the RFP describes the work requirements:

> 2.5  The contractor shall be required to repair/re-stencil 8 containers per day.  In the event of a military surge, the contractor will increase output incrementally up to a maximum of 33 containers per day.  Increments of output are 13, 18, 23, 28 and 33 depending on the level of need during a military surge period. . . .
>
> 2.5.1   The contractor shall have up to 30 days from a notice of military surge/increment increase to obtain additional workers and allow time for the installation badging process.  The 30 days is allowed for each increment of increase. . . .
>
> 2.6  If the Government is unable to provide 8 containers per day for repair/re-stencil, the contractor will only be held responsible to repair/re-stencil the number of containers provided by the Government that day. . . .

AR Tab 18a.1, at 435–36.

To select an awardee, the Army used a lowest price technically acceptable ("LPTA") source selection process that evaluated three factors: Technical; Past Performance; and Price.  AR Tab 15, at 89.  Attachment 0005 describes the evaluation methodology for each factor:

> a) Technical Capability Factor.  The three (3) Subfactors of the Technical Proposal [technical capabilities, quality, and management] are considered of equal weight and will be evaluated as such.  An Acceptable or Unacceptable rating will be assigned to each of the three (3) Subfactors with supporting narrative substantiating the basis for each rating.  The Government will only evaluate Past Performance on those proposals that receive an "Acceptable" for the Technical Capability Factor.
>
> b)  Past Performance Factor.  Past Performance information will be evaluated and an Acceptable or Unacceptable rating will be assigned with supporting narrative

---

[2] The facts discussed herein were derived from: the November 25, 2014 Administrative Record ("AR Tabs 1–59," comprised of pages 1–1946) and December 9, 2014 Corrected Administrative Record ("AR Tabs 60–61," comprised of pages 1947–1961).

substantiating the basis for the rating.  In the event an Offeror has no recent, relevant past performance, a rating of Acceptable will be assigned.  The Government will only evaluate Price on those proposals that receive an "Acceptable" on the Past Performance Factor.

c)  Price Factor.  Price will be evaluated IAW Factor III – Price (See 5.3).[3]

AR Tab 24a.1, at 788–89.

Thus, an offeror must clear three successive hurdles to be awarded the contract:  First, an offeror must obtain an "Acceptable" rating in Technical Capability and an "Acceptable" rating in Past Performance, and then must propose the lowest price.  AR Tab 24a.1, at 788–89.

Attachment 0005 provides, however:

In the case of an Offeror without a record of relevant past performance or for whom information on past performance is not available or so sparse that no meaningful past performance rating can be reasonably assigned, the Offeror may not be evaluated favorably or unfavorably on past performance (see FAR 15.305(a)(2)(iv)).  Therefore, the Offeror shall be determined to have unknown past performance.  In the context of acceptability/unacceptability, "unknown" shall be considered "acceptable."

AR Tab 24a.1, at 791.

The FRP also included a list of Federal Acquisition Regulation ("FAR") clauses.  AR Tab 15, at 103–04.  Next to each clause is a short line with the applicable FAR clauses incorporated by reference and signified with an "X" on the adjacent line.  AR Tab 15, 103–04.  The line next to FAR 52.222-17 (Nondisplacement of Qualified Workers), however, was not checked.  AR Tab 15, at 103.

After ten amendments to the RFP, the Army set a closing date of August 15, 2014 for proposal submissions.  AR Tab 25, at 804–05.

## B.     The Proposals.

Four offerors submitted timely proposals: KGL International For Port, Warehousing and Transportation, K.S.C.C. ("KGL"); [REDACTED]; [REDACTED]; and Universal Marine.  AR Tab 46, at 1795.  On August 21, 2014, after holding discussions with the offerors, the Army received final revised proposals.  AR Tab 46, at 1795, 1798.

All four proposals received an "Acceptable" rating for both the Technical and Past Performance factors.  AR Tab 46, at 1795–1801.

---

[3] Section 5.3 provides specific pricing evaluation criteria not relevant here.  *See* AR Tab 24a.1, at 792–93.

The prices of the proposals are reflected in the following chart:

| Offeror | Price Evaluation (rounded to nearest dollar) |
| --- | --- |
| KGL | $98,839,609 |
| [REDACTED] | [REDACTED] |
| [REDACTED] | [REDACTED] |
| Universal Marine | [REDACTED] |

AR Tab 46, at 1795–1801.

### 1.    Universal Marine's Proposal.

On August 5, 2014, Universal Marine submitted a proposal that included: (1) an Introduction; (2) a Technical Volume; (3) a Past Performance Volume; and (4) a Price Volume. AR Tabs 31a–d.1, at 1191–1277. The proposed price was $[REDACTED]. AR Tab 46, at 1795. In the Technical Volume, Universal Marine stated that it:

> has laid out the [work site] so that there is a smooth flow of containers from the Incoming Container Staging Area to the Dispatch Area. The layout has been designed to handle up to 40 containers per day so [it] is more than adequate to handle the reduced maximum of 33 containers a day. The company plans to maintain the same level of equipment, tools and material stock as currently used so that in [the] event of an increase of daily quota only the manpower needs to be increased.

AR Tab 31b, at 1125.

### 2.    KGL's Proposal.

On May 30, 2014, KGL submitted a proposal that included: (1) an Introduction; (2) a Technical Volume; (3) a Past Performance Volume; and (4) a Price Volume. AR Tabs 29a–d, at 966–1091. KGL's proposed price was $98,839,609. AR Tab 46, at 1795.

In the Technical Volume, KGL stated:

> KGL shall make repairs to containers in accordance with the contract guidelines and [Performance Work Statement]. All the repairs will take place at the designated repair Area inside Camp Arafijan, or other locations within the Kuwait AOR, as required and directed. KGL will deploy enough certified technicians to carry out all the repairs strictly according to international standards to make sure that all containers will meet customer's quality requirements. . . . In case of surge operations and upon receipt of 48 hours notice from the Government, a sufficient

number of technicians shall be mobilized and ready for operations 24 hours, 7 days a week.

AR Tab 29b, at 1025.

### C. The Award.

On September 19, 2014, the Army notified Universal Marine that the contract was awarded to KGL. AR Tabs 53–54, at 1876–92. On September 22, 2014, Universal Marine requested and later received a post-award briefing. AR Tab 55b, at 1894; AR Tab 56c, at 1918–28.

## II. RELEVANT PROCEDURAL HISTORY.

### A. The Government Accountability Office Protest.

On September 29, 2014, Universal Marine filed a protest with the Government Accountability Office ("GAO"), arguing that: (1) "[KGL's] proposed approach does not satisfy the FRP requirements and the Government failed to reasonably assess and evaluate [KGL's] Technical Proposal"; (2) the Army "failed to properly evaluate [KGL's] approach for hiring incumbent employees"; (3) the Army "failed to properly evaluate [Plaintiff's] and [KGL's] pricing"; and (4) the Army "failed to provide the required minimal consideration to [Plaintiff's] and [KGL's] pricing." AR Tab 57, at 1929–43; *Matter of Universal Marine Co. K.S.C.*, B-409886.2 (Comp. Gen. Oct. 24, 2014).

On October 14, 2014, the GAO dismissed Universal Marine's protest, because it "is not an interested party." AR Tab 59, at 1945.

### B. United States Court of Federal Claims.

On November 17, 2014, Universal Marine filed a Complaint in the United States Court of Federal Claims, under seal, challenging the contract award to KGL. On that same day, Universal Marine also filed a Motion For Temporary Restraining Order and a Motion To File Under Seal. On November 18, 2014, the court held a status conference and filed a Protective Order. On November 25, 2014, the Government filed the Administrative Record, under seal. On December 9, 2014, the Government filed a corrected Administrative Record, under seal.

On December 3, 2014, KGL filed an unopposed Motion To Intervene that the court granted on December 4, 2014. On that date, Universal Marine filed a Motion For Judgment On The Administrative Record under seal ("Pl. Mot.").

On December 10, 2014, the Government and KGL each filed separate Cross-Motions ("Gov't Mot." and "KGL Mot."). On December 15, 2014, Universal Marine filed a Response to the Government's Cross-Motions ("Pl. Resp."). On December 17, 2014, the Government and KGL each filed separate replies ("Gov't Reply" and "KGL Reply").

## III.   DISCUSSION.

### A.   Jurisdiction.

The United States Court of Federal Claims is required to make a threshold determination regarding jurisdiction. *See Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005) ("[A]t the outset [the court] shall determine . . . whether the Constitutional provision, statute, or regulation is one that is money-mandating. If the court's conclusion is that the Constitutional provision, statute, or regulation meets the money-mandating test, the court shall declare it has jurisdiction over the cause, and shall then proceed with the case in the normal course.").

The United States Court of Federal Claims has jurisdiction:

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1).

The November 17, 2014 Complaint alleged several violations of law and/or regulation "in connection with" this procurement. *Id.* Count I alleges that the Army's evaluation process was flawed under both the Competition In Contracting Act, 31 U.S.C. § 3551 *et seq.* ("CICA"), and 10 U.S.C. § 2302(3). Count I seeks declaratory relief. Compl. ¶¶ 25–32. Count II seeks permanent injunctive relief. Compl. ¶¶ 33–38. As such, the November 17, 2014 Complaint alleges sufficient facts of a money-mandating claim to satisfy 28 U.S.C. § 1491(b)(1), and places at issue the alleged violations of law and/or regulation "in connection with" this procurement.

### B.   Standard of Review.

Pursuant to the Tucker Act, as amended by the Administrative Dispute Resolution Act, Pub. L. No. 104-320 § 12, 110 Stat. 3870, 3874 (Oct. 19, 1996), the United States Court of Federal Claims is authorized to review challenges to agency decisions, pursuant to the standards set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. *See* 28 U.S.C. § 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5."); *see also* 5 U.S.C. § 706(2)(A) ("The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"); *Banknote Corp. of Am., Inc. v. United States,* 365 F.3d 1345, 1350 (Fed. Cir. 2004) ("Among the various APA standards of review in section 706, the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A): a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'") (citations omitted); *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1358 (Fed. Cir. 2009) (same).

When a bid protest is based on a regulatory or procedural violation, *i.e.*, "not in accordance with law," our appellate court also has imposed an additional requirement that "the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations." *Axiom*

*Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009) (internal quotations and citations omitted). This burden is even greater when the procurement is a "best value" procurement, as is the case here.[4] *See Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004) ("[A]s the contract was to be awarded based on 'best value,' the contracting officer had even greater discretion . . . . [T]he relative merit of competing proposals is primarily a matter of administrative discretion.") (citations omitted); *see also TRW, Inc. v. Unisys Corp.*, 98 F.3d 1325, 1327 (Fed. Cir. 1996) ("In determining whether the agency has complied with the regulation authorizing best value procurements, the [reviewing authority] may overturn an agency's decision if it is not grounded in reason.").

If an award decision is challenged because it was made without a rational basis, the trial court must determine "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332–33 (Fed. Cir. 2001) (international citations and quotations omitted); *see also Savantage Fin. Servs., Inc. v. United States*, 595 F.3d 1282, 1287 (Fed. Cir. 2010) ("[W]e must sustain an agency action unless the action does not evince rational reasoning and consideration of relevant factors.") (internal alterations, quotations, and citations omitted); *Weeks Marine*, 575 F.3d at 1368–69 ("We have stated that procurement decisions invoke highly deferential rational basis review . . . . Under that standard, we sustain an agency action evincing rational reasoning and consideration of relevant factors.") (internal alterations, quotations, and citations omitted).

In the alternative, if an award decision is challenged on the grounds that an agency acted in an arbitrary or capricious manner, the court may intervene "only in extremely limited circumstances." *United States v. John C. Grimberg Co., Inc.*, 702 F.2d 1362, 1372 (Fed. Cir. 1983). "Courts have found an agency's decision to be arbitrary and capricious when the agency 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

In this case, the parties have filed Cross-Motions For Judgment On The Administrative Record, requiring the court to conduct a proceeding akin to an expedited trial on the record. *See* RCFC 52.1; *see also Bannum*, 404 F.3d at 1356 ("[T]he judgment on an administrative record is properly understood as intending to provide for an expedited trial on the record."). The existence

---

[4] There are two kinds of "best value" selection processes: the "best value tradeoff," pursuant to 48 C.F.R. § 15.101-1, and the Lowest Price Technically Acceptable ("LPTA"), pursuant to 48 C.F.R. § 15.101-2. The April 24, 2014 RFP was a LPTA selection. AR Tab 15, at 89. As a result, "[t]radeoffs are not permitted." 48 C.F.R. § 15.101-2(b)(2). A proposal is *per se* the best value if it meets the selection criteria and proposes the lowest price. *See* 48 C.F.R. § 15.101-2(a) ("The lowest price technically acceptable source selection process is appropriate when best value is expected to result from selection of the technically acceptable proposal with the lowest evaluated price.").

of a material issue of fact, however, does not prohibit the court from granting a motion for judgment on the administrative record, although the court has not conducted an evidentiary proceeding. *Bannum*, 404 F.3d at 1357 (authorizing the court to make "factual findings under RCFC [52.1][5] from the [limited] record evidence as if it were conducting a trial on the record").

###   C.   Plaintiff's December 3, 2014 Motion For Judgment On The Administrative Record.

Universal Marine argues that the Army "failed to conduct an evaluation in accordance with its stated criteria and appropriate laws and regulations; this created a systemic failure of the evaluation process and calls into question the evaluations of all offerors." Pl. Mot. at 12. Specifically, five errors are alleged:

1)   "KGL's proposed management approach does not satisfy the RFP requirements and the Government failed to reasonably assess and evaluate KGL's technical proposal." Pl. Mot. at 12.

2)   "The Government failed to properly evaluate KGL's approach for hiring incumbent employees." Pl. Mot. at 14.

3)   "The Government failed to properly evaluate Plaintiff's and KGL's pricing." Pl. Mot. at 16.

4)   "The Government failed to provide the required minimal consideration to KGL's and Plaintiff's pricing." Pl. Mot. at 18.

5)   "Past Performance Evaluation was Skewed in favor of Unknowns, Further Increasing Contracting Risk." Pl. Mot. at 20.

###   D.   The Government's December 10, 2014 Motion To Dismiss.

####     1.   The Government's Argument.

The Government argues that Universal Marine lacks standing, because it finished fourth and has not challenged the offerors who finished second and third. Gov't Mot. at 11 ("[Universal Marine] has provided no arguments regarding the intervening offerors that placed second-in-line and third-in-line for award."). Thus, even if KGL's award were disqualified, Universal Marine still "cannot show that it had a substantial chance of being awarded the contract when it proposed the highest price." Gov't Mot. at 11. The Army properly evaluated the four offerors and ranked them by price. Gov't Mot. at 11. Thus, "if [Universal Marine] were to be awarded the relief it seeks, and the [c]ourt were to set aside the contract to KGL, the agency will—in accordance with

---

[5] In 2006, RCFC 56.1 "Review of a Decision on the Basis of the Administrative Record" was repealed and replaced with RCFC 52.1, to conform to the United States Court of Appeals for the Federal Circuit's decision in *Bannum*, 404 F.3d at 1354 (holding that the court should "make factual findings from the record evidence as if it were conducting a trial on the record"). *See* RCFC 52.1, 2006 Rules Committee Notes.

the solicitation—make an award to [REDACTED], whose price was $[REDACTED] less than [REDACTED] proposal and $[REDACTED] less than [Universal Marine's] proposal." Gov't Mot. at 11.  In addition, Universal Marine has alleged no error that would disqualify [REDACTED] or [REDACTED] proposals, and therefore lacks standing, because it "has no substantial chance of being awarded the contract."  Gov't Mot. at 11.

Moreover, Universal Marine "cannot show that it was prejudiced by a significant error in the procurement process."  Gov't Mot. at 12.  To show prejudice, a protestor must establish "that there was a substantial chance it would have received the contract award but for th[e] error."  *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999).  Universal Marine cannot show a substantial chance of receiving the award and consequently cannot demonstrate prejudice.  Gov't Mot. at 12.

## 2. Plaintiff's Response.

Universal Marine responds that "the fundamentals of [its] standing arguments have already been laid out and presented [in Plaintiff's Motion For Judgment On The Administrative Record]."  Pl. Resp. at 2.  Universal Marine contends that "the issue is not whether an [o]fferor is 'next in line,' but whether the [o]fferor has a reasonable expectation to receive an award."  Pl. Mot. at 9 (citing *ITT Elec. Sys.*, B-406405 (May 21, 2012) for the proposition that "because the [p]laintiff submitted a proposal and protested[, it] was therefore 'in line' for [the] award").  Being "in line" for an award means "being able to meet the [RFP] requirements such that the Plaintiff is an eligible bidder and potential awardee on the contract."  Pl. Mot. at 10.  In addition, Universal Marine challenges the Army's technical evaluation as it resulted in flawed technical proposals improperly receiving "Acceptable" ratings.  Pl. Mot. at 10.  And, "if one asserts that the analysis of 'technically acceptable' is flawed, then the rack and stack of [o]fferors by price is necessarily flawed as well."  Pl. Mot. at 11.

In its Motion For Judgment On The Administrative Record, Universal Marine argues it was prejudiced by complying with FAR 52.222-17 (hiring incumbent workers) when no other offeror complied with that regulation.  Pl. Mot. at 12.  But, in its Reply, Plaintiff concedes that the RFP did not require compliance with FAR 52.222-17.  Pl. Reply at 7 ("In this, the Government is accurate and [Plaintiff] is mistaken.").

Finally, Universal Marine argues that the Army and KGL "would like to make the calculus of standing and interest party overly simplified."  Pl. Reply at 3.  Determining standing requires examining the merits of the protest, not just a "blind reliance on the stacking and arraying of the 'acceptable' proposals."  Pl. Reply at 4 (citing *Hyperion, Inc. v. United States*, 115 Fed. Cl. 541, 550 (2014) ("If the government indeed erred in the ways [the plaintiff] alleges, [the plaintiff] would have received the award but for the errors.  The government's arguments to the contrary relate to the merits of [the plaintiff's] contentions[.]")).  Universal Marine is not required to "dissect each proposal in the array that is above it, especially if it demonstrates a systemic flaw in the evaluation process[.]"  Pl. Reply at 4.

3.      **The Court's Resolution.**

As a threshold matter, a plaintiff contesting the award of a federal contract must establish that it is an "interested party" to have standing under 28 U.S.C. § 1491(b)(1).   *See Myers Investigative & Sec. Servs. v. United States*, 275 F.3d 1366, 1370 (Fed. Cir. 2002) ("[S]tanding is a threshold jurisdictional issue.").  The United States Court of Appeals for the Federal Circuit has construed the term "interested party" under 28 U.S.C. § 1491(b)(1) as synonymous with "interested party" under CICA, 31 U.S.C. § 3551(2)(A) (2006).  *See Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006) (citing decisions adopting the CICA definition of "interested party" for 28 U.S.C. § 1491(b)(1) purposes).  A two-part test is applied to determine whether a protestor is an "interested party."  The protestor must show that: "(1) it was an actual or prospective bidder or offeror, and (2) it had a direct economic interest in the procurement or proposed procurement."  *Distrib. Solutions, Inc. v. United States*, 539 F.3d 1340, 1344 (Fed. Cir. 2008) (citations omitted).  A third test has added that a protestor must show the alleged errors in the procurement were prejudicial.  *Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1378–79 (Fed. Cir. 2009) ("It is basic that because the question of prejudice goes directly to the question of standing, the prejudice issue must be reached before addressing the merits.") (internal citations and quotations omitted); *see also Myers*, 275 F.3d at 1370 ("[P]rejudice (or injury) is a necessary element of standing.").  A party demonstrates prejudice when "it can show that but for the error, it would have had a substantial chance of securing the contract."  *Labatt*, 577 F.3d at 1378.  Importantly, a proper standing inquiry must not conflate the requirement of "direct economic interest" with prejudicial error.  *Id.* at 1380 (examining economic interest but excluding prejudicial error from the standing inquiry "would create a rule that, to an unsuccessful but economically interested offeror in a bid protest, any error is harmful").

In this case, Universal Marine submitted a proposal in response to the RFP.  AR Tabs 31a–d.1, at 1191–1277.  As an actual bidder, it satisfies the first element of the "interested party" test.  *See Distrib. Solutions, Inc.*, 539 F.3d at 1344 (holding that a protestor must show that "it was an actual or prospective bidder or offeror").

But, Universal Marine did not satisfy the second element, *i.e.*, that it "had a direct economic interest in the procurement."  *Distrib. Solutions, Inc.*, 539 F.3d at 1344.  Direct economic interest requires a showing that but for the alleged error, Universal Marine had a "substantial chance" of winning the contract.  *See Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1582 (Fed. Cir. 1996) (holding that for a protestor "to prevail it must establish not only some significant error in the procurement process, but also that there was a substantial chance it would have received the contract award but for that error"); *see also Labatt*, 577 F.3d at 1378–79 (same).  Universal Marine's proposed price was the highest of the four proposals.  AR Tab 46, at 1795–1801.  Thus, to have standing, it would have to challenge the bona fides of each of the other three offeror's eligibility or the solicitation as a whole.  *See United States v. IBM Corp.*, 892 F.2d 1006, 1010 (Fed. Cir. 1989) (upholding the Government's argument that the plaintiff "could not receive the contract even if its protest were granted, because its bid ranked fourth-lowest . . . [and] it did not challenge either the solicitation itself or the eligibility of the intervening bidders").  Most of Universal Marine's challenges concern only the awardee—KGL.  *See, e.g.*, Pl. Mot. at 12 ("*KGL's* proposed management approach does not satisfy the FRP requirements and the Government failed to reasonably assess and evaluate *KGL's* technical proposal."); Pl. Mot. at 14 ("The Government failed to properly evaluate *KGL's* approach for hiring incumbent employees."); Pl. Mot. at 16

("The Government failed to properly evaluate Plaintiff's and *KGL's* pricing."); Pl. Mot. at 18 ("The Government failed to provide the required minimal consideration to *KGL's* and Plaintiff's pricing.") (emphasis added). Based on these four challenges, even if the court were to set aside the award to KGL, the award would go to the second-place offeror, [REDACTED]. Gov't Mot. at 11. Without any challenge to the intervening offerors, Universal Marine cannot prevail. *See IBM Corp.*, 892 F.2d at 1010.

Universal Marine alleges one issue that it contends taints the solicitation as a whole, *i.e.*, the "Past Performance Evaluation was Skewed in favor of Unknowns, Further Increasing Contracting Risk." Pl. Mot. at 20. Because this issue implicates the evaluation of all three other offerors, Universal Marine would have standing on this basis. *See IBM*, 892 F.2d at 1010 (holding that a plaintiff has standing when challenging the solicitation). But, here Universal Marine failed to raise this Past Performance argument with the contracting officer prior to the close of the bidding process. Gov't Mot. at 9 n.5. "[A] party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection afterward in a § 1491(b) action in the Court of Federal Claims." *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1315 (Fed. Cir. 2007). Here, Universal Marine did not contend that it objected to the Past Performance evaluation prior to the close of the bidding process. Instead, it argues that the alleged error was not patent, and that the FRP's description of the Past Performance evaluation methodology "was not sufficient notice to make [Universal Marine] aware of the fact that 'Acceptable' proposals were going to be actually rated the same for past performance." Pl. Reply at 6. Although Universal Marine cited no precedent in support of its argument, Attachment 0005 clearly states that offerors without relevant past performance will receive an "unknown" determination that translates to an "Acceptable" rating. As such, in this case, there is no latent ambiguity sufficient to overcome *Blue & Gold Fleet*'s requirement that an offeror lodge an objection to the solicitation terms before the close of the evaluation process.

As for Universal Marine's reliance on *Hyperion, Inc. v. United States*, 115 Fed. Cl. 541 (2014), it is misplaced, even though some facts are similar to this case. Hyperion filed a post-award protest as the highest-priced of four "Acceptable" offerors in an LPTA solicitation. *Id.* at 544. However, the Hyperion "contend[ed] that all three [other] offerors failed to meet [certain provisions] and failed to include required [provisions]." *Id.* Hyperion went on to allege particular defects in each of the other three proposals. *Id.* "In Hyperion's view, it was the only technically acceptable offeror and should have received the award." This case, however, is distinguishable. Here, four out of Universal Marine's five arguments are specific to KGL, and the problem identified with the solicitation was waived under *Blue & Gold Fleet*. Thus, even though "proving prejudice for purposes of standing merely requires 'allegational prejudice,'" Universal Marine has not alleged facts that, if true, would create a "substantial chance" that it would be awarded the contract. *See Hyperion*, 115 Fed. Cl. at 550.

For these reasons, the court has determined that Universal Marine lacks standing to seek an adjudication of this bid protest.

## IV.    CONCLUSION.

For reasons discussed herein, Plaintiff's December 3, 2014 Motion For Judgment On The Administrative Record is denied.  The Government's and KGL's December 10, 2014 Cross-Motions are granted.  Accordingly, the Clerk is direct to enter judgment on behalf of the Government and KGL.

No costs.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**